UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SEPTEMBER A. S.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:19-CV-69-DRL-MGG |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff, September A. S. ("Ms. S.") seeks judicial review of the Social Security Commissioner's decision denying her application, dated December 30, 2014, for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This case was referred to the undersigned on June 17, 2019, for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). For the reasons discussed below, the undersigned **RECOMMENDS** that the Court **REVERSE AND REMAND** the decision of the Commissioner of the Social Security Administration ("SSA") in Ms. S.'s case.

**I.   OVERVIEW OF THE CASE**

Ms. S. was 18 years old on January 1, 2004, her alleged disability onset date and 28 years old when she filed her SSI application in 2014. Ms. S. completed ninth grade with assistance from special education classes. She worked a handful of part-time jobs

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name and last initial only.

on and off from about 2002 into 2014. She held none of her jobs for an extended period. Ms. S. is now a divorced mother of three who forfeited custody of her children during her divorce because she lacked the means to support them at that time.

Ms. S. now alleges that she suffers from both physical and mental impairments that prevent her from working and make her disabled, as defined by the Social Security Act ("Act"). Specifically, she contends that back, leg, and knee pain, migraine headaches, morbid obesity, chronic obstructive pulmonary disease ("COPD"), depression and anxiety, and borderline intellectual functioning and learning disability limit her ability to work thus qualifying her for SSI benefits.

At a hearing on May 4, 2017, Ms. S. testified before an administrative law judge ("ALJ") about her impairments and related SSI matters without the assistance of an attorney or other representative. A vocational expert ("VE") also testified at the hearing. On October 12, 2017, the ALJ issued a written decision—reached upon review of Ms. S.'s SSI application and record as well as the hearing testimony—finding her not disabled under the Act. As a result, the ALJ denied Ms. S.'s request for SSI benefits. On January 2, 2019, the Appeals Council denied Ms. S.'s timely request for review making the ALJ's October 2017 decision the final decision of the Commissioner. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005). Now ripe before this Court is Ms. S.'s complaint for judicial review of the Commissioner's unfavorable decision under 42 U.S.C. § 405(g).[2] Notably, Ms. S. is represented by counsel in this action.

---

[2] Plaintiff's complaint became ripe on September 23, 2019, without any reply brief being filed. *See* N.D. Ind. L.R. 7-3(d).

## II.  DISABILITY STANDARD

In order to qualify for SSI benefits, a claimant must be "disabled" under Section 223(d) of the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's five-step inquiry in evaluating claims for disability benefits under the Act includes determinations as to: (1) whether the claimant is doing substantial gainful activity ("SGA"); (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404 to establish disability without further analysis; (4) whether the claimant can perform her past relevant work based upon her residual functional capacity ("RFC"); and (5) whether the claimant is capable of making an adjustment to other work. 20 C.F.R. §§ 416.920(a)(4); *see also Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except Step Five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). As such, the claimant must prove that she is disabled and submit all evidence relevant to the Commissioner's disability determination. 20 C.F.R. § 416.912(a)(1).

## III.  STANDARD OF REVIEW

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing Social Security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). A court reviews the

entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). The Court must give deference to the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). The deference for the ALJ's decision is lessened where the ALJ's findings contain errors of fact or logic or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013).

Additionally, an ALJ's decision cannot be affirmed if it lacks evidentiary support or an inadequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ's decision will lack sufficient evidentiary support and require remand if it is clear that the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014). At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). An ALJ may not ignore an entire line of evidence contrary to her findings. *Zurawski v. Halter*, 243 F.3d 881, 888 (7th Cir. 2001). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to his conclusions, the ALJ must at least provide a glimpse into the reasoning behind his analysis and the decision to deny benefits.

4

*O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007). "Substantial" evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th. Cir. 2007). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017).

## IV. ANALYSIS[3]

Here, Ms. S. challenges two aspects of the ALJ's decision. First, Ms. S. contends that the ALJ did not satisfy his burden to develop a full and fair record. Second, Ms. S. asserts that the ALJ's RFC determination is not supported by substantial evidence. Each argument is addressed in turn below.

### A. Full and Fair Record

Despite a claimant's burden to prove disability, the ALJ in a social security hearing must develop a full and fair record. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir.

---

[3] As a preliminary matter, the undersigned notes that Ms. S.'s briefing in this matter, prepared by her attorney, presents her arguments in a confusing manner with citation to only minimal relevant legal authority and reliance on many unsupported, conclusory statements. These briefs lead the undersigned to suspect that Ms. S., through her counsel, is inviting the Court to reweigh evidence rather than evaluate the ALJ's work. *See Boiles,* 395 F.3d at 425. This Court cannot, and will not, accept even an implied invitation of this sort. This Report and Recommendation thus reflects the undersigned's inferences of proper arguments arising from Ms. S.'s counsel's inartful briefing.

5

2000) (citing *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991)). When a claimant is not represented by counsel, the ALJ's duty expands to include scrupulous and conscientious probing into, inquiry of, and exploration for all relevant facts. *Thompson*, 933 F.2d at 585 (citing *Smith v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 857, 860 (7th Cir. 1978); *see also Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997). Put another way, "the administrative law judge has a duty in [cases where the claimant is unrepresented] to ask questions that will elicit a full picture of the applicant's capacity for full-time gainful employment." *Johnson v. Barnhart*, 449 F.3d 804, 807 (7th Cir. 2006). To meet this burden, an ALJ must supplement the record as necessary by asking detailed questions of witnesses at the hearing, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information. *See* 20 C.F.R. § 416.912(b).

The Seventh Circuit generally upholds the reasoned judgment of the Commissioner on how much evidence to gather, even when the claimant lacks representation. *See Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994); *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994). Accordingly, "a significant omission is usually required before this court will find that the [Commissioner] failed to assist pro se claimants in developing the record fully and fairly." *Luna*, 22 F.3d at 692. And an omission is significant only if it is prejudicial. *See Nelson*, 131 F.3d at 1235. "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion*, 13 F.3d at 246. Instead a claimant must set forth specific, relevant fact—that the ALJ did not consider. *Nelson*, 131 F.3d at 1235; *see Binion*, 13 F.3d

at 245 ("Prejudice may be demonstrated by showing that the ALJ failed to elicit all of the relevant information from the claimant."); *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (significant gaps in the record may preclude a fair and adequate hearing).

In support, Ms. S. directs the Court's attention to several alleged evidentiary gaps that she claims the ALJ should have probed further during the May 2017 hearing. While the inartful briefing presented on behalf of Ms. S. prevents the Court from clearly discerning the exact focus of all her arguments, two of her arguments reveal significant evidentiary gaps in the record developed by the ALJ. Generally, the ALJ failed to develop a full and fair record at the hearing as to the effects of Ms. S.'s migraines and her borderline intellectual functioning on her ability to work.

1. **Migraines**

At the hearing, the ALJ clearly asked Ms. S. questions about how long she had been experiencing migraines, how frequently she experienced them, the intensity of some side effects such as light and sound sensitivity and associated neck pain, and her treatment. [DE 12 at 61–63]. However, the transcript makes clear—as Ms. S. argues—that the ALJ did not press Ms. S. on further details evident in the record. For instance, the ALJ did not ask Ms. S. to discuss known triggers of her migraines such as turning her head side to side or looking down, which she expressly mentioned in her Function Report dated March 3, 2015. [DE 12 at 206]. Similarly, the ALJ did not ask Ms. S. why she did not always take her migraine medication or pursue additional treatment for her migraines. Yet, in her Disability Appeals Report, Ms. S. indicated that the cost of her

7

migraine medication was prohibitive for her even though her migraines were often so severe as to make her vomit. [*Id.* at 217]. Lastly, the ALJ did not ask the vocational expert how an employer would react to an employee whose migraines caused absences or how late arrivals, or early departures would be viewed in terms of absences.

The ALJ's written decision also leaves an evidentiary gap as to Ms. S.'s migraines. As referenced above in part, Ms. S. alleged migraine symptoms in her February 2015 Headache Questionnaire [*Id.* at 197], her March 2015 Function Report [*Id.* at 198–207], and her August 2015 Disability Appeals Report [*Id.* at 217]. However, the ALJ's written decision does not cite to any of Ms. S.'s allegations about her migraines in these three reports. Therefore, the Court is left unable to discern what migraine allegations he actually considered—especially given the gaps in his questioning of Ms. S. at the hearing.

Without more, the ALJ has failed to elicit all the relevant information from Ms. S. regarding her migraines. That omission is significant as the trigger and absence information could have a direct effect on whether jobs exist in the national economy that Ms. S. can perform. Thus, the gap in the record is prejudicial. Moreover, the ALJ did not create a logical bridge in his written decision from the evidence of Ms. S.'s migraines in the record to his ultimate conclusion regarding Ms. S.'s SSI application.

### 2. Borderline Intellectual Functioning

Central to Ms. S.'s SSI application is her back and leg pain, which appear to be related. At the hearing, the ALJ inquired about the back and leg pain. As part of that discussion, Ms. S. testified that:

8

> at times, with all the pain, I'm basically almost paralyzed. It takes me a while to get up out of bed. It takes me a while to get up off the couch sometimes. Sometimes I have to go have injections for the pain. It's just sometimes I'm just very disabled at times.

[DE 12 at 57]. The term "almost paralyzed" is unusual in this context. Moreover, her explanatory testimony subsequent to using the word "paralyzed" is not consistent with the definition of paralysis. Thus, Ms. S.'s attorney now argues that it is quite possible that given her borderline intellectual functioning diagnosis, Ms. S. did not understand the meaning of the word "paralyzed."

Yet at the hearing, the ALJ did not inquire further to confirm Ms. S.'s intended meaning when using the word "paralyzed." Nevertheless, the ALJ used Ms. S.'s alleged "near paralysis" in the written decision to show that her alleged symptoms were inconsistent with other evidence in the record. [DE 12 at 30–31]. The ALJ's written opinion also lacked any meaningful discussion of the effects of Ms. S.'s borderline intellectual functioning on her ability to work. Most concerning here, though, is that the ALJ did not consider the effect Ms. S.'s borderline intellectual functioning could have had on her hearing testimony, especially given her decision to proceed unrepresented at the hearing. This omission is also significant and prejudicial making it worthy of remand.

### 3. Other Impairments

Other gaps Ms. S. identifies in the record are not sufficiently prejudicial on their own to justify remand. Despite Ms. S.'s concern about the ALJ's failure to document her alternations between sitting and standing while she was testifying before the ALJ, the

9

ALJ specifically asked Ms. S. how often, in terms of minutes, she would need to alternate from sitting to standing. [DE 12 at 66]. The ALJ also asked about whether Ms. S. ever needed a cane or walker to help her stand or walk. Thus, any omission here produced no prejudice given the ALJ's inquiries.

Ms. S. fails to demonstrate any evidentiary gap in the ALJ's statement in his Step Three Listing analysis that "there is no evidence of . . . Lumbar spinal stenosis resulting in pseudoclaudication." [DE 12 at 28]. Ms. S. suggests that this statement shows that the ALJ ignored clear evidence of lumbar spinal stenosis. However, the ALJ's statement was made as part of his discussion of a particular Step Three listing requirement regarding pseudoclaudication or an inability to ambulate effectively. The ALJ was not dismissing or ignoring Ms. S.'s lumbar spinal stenosis diagnosis. Instead, he was analyzing the ambulation issue, which he also discussed with Ms. S. at the hearing. [DE 12 at 65–67]. Thus, Ms. S.'s argument here is misplaced.

In alleging an evidentiary gap relative to the effects of her obesity combined with her other impairments, Ms. S.'s brief explains how her weight affects her ability to reach, handle, and finger. She then suggests that the ALJ did not explore her functional limitations arising from her obesity. Even though the ALJ only asked Ms. S. about her height and weight at the hearing, the ALJ did discuss lifting, carrying, holding objects, gripping, grasping, and bending to retrieve objects with Ms. S. [DE 12 at 67]. Thus, the ALJ accounted for the limitations Ms. S. has expressed concern about on judicial review. Ms. S. does not direct the Court's attention to other evidence related to obesity. As a result, she has not established that any gap here is significant or prejudicial.

Ms. S. further contends that other evidentiary gaps exist as to her sleep disorder, her need for assistance with self-care, and other reasons for lack of compliance with prescribed treatments. While none of these alleged gaps clearly rise to the level of significant or prejudicial, they should be carefully considered on remand. Moreover, Ms. S.'s concern that the ALJ did not gather records from April 2017 through the date of his decision in October 2017 can be further addressed as deemed appropriate. The Court notes, however, that Ms. S. did present the ALJ with evidence into June 2017 and that her counsel has not directed the Appeals Council's or this Court's attention to any further missing information. Lastly, the agency on remand can ensure that the vocational expert is fully questioned as to the effect of absences and tardiness on the availability of jobs.

### B.   RFC Determination

A claimant's RFC is the most activity in which she can engage in a work setting despite the physical and mental limitations that arise from her severe and non-severe impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p; *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). In crafting an RFC, the ALJ must consider "all of the relevant medical and other evidence" in the record. 20 C.F.R. § 404.1545(a)(3); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

Here, the ALJ determined that Ms. S. retains the RFC to perform light work[4] with the following exertional limitations:

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

> a sit/stand option (which allows for alternating between sitting and standing up every 30 minutes, if needed, but the positional change will not render the individual off task); only occasional climbing of ramps and stairs, balancing, stopping, kneeling, crouching, and crawling; never climbing ladders ropes or scaffolds; needs to avoid concentrated exposure to loud noise, bright/flashing lights, pulmonary irritants . . . and hazards.

[DE 12 at 29]. The ALJ's mental RFC for Ms. S. further limits her

> to understanding, remembering, and carrying out simple, routine repetitive tasks, consistent with unskilled work (defined as occupations that can be fully learned within a short period of time of no more than 30 days, and requires little or no judgment to perform simple tasks), with the ability to sustain those tasks throughout an eight hour workday without frequent redirection to task; no sudden or unpredictable workplace changes in terms of use of work tools, work processes, or work settings, and if there are workplace changes, they are introduced gradually; work that does not require satisfaction of strict or rigid production quotas or does not involve assembly-line pace work; only superficial interactions with supervisors coworkers, and the general public defined as occasional and casual contact with no prolonged conversations and contact with supervisors is short but allows the supervisors to give instructions.

[DE 12 at 29]. Ms. S. argues that the ALJ improperly failed to incorporate functional limitations arising from all her impairments, including her limitations in concentration, persistence, and pace ("CPP"), into her RFC. Additionally, Ms. S. posits that the ALJ improperly overemphasized her activities of daily living in finding that her statements concerning the intensity, persistence, and limiting effects of her alleged symptoms where not entirely consistent with the evidence of record.

### 1. Complete Functional Limitations

Ms. S. argues that the ALJ did not adequately account for limitations in concentration, persistence, and pace in crafting Ms. S.'s mental RFC. Ms. S. also

contends that the physical RFC determined by the ALJ is illogical given the limitations arising from her obesity.

### a.  Mental RFC

At Step Three, the ALJ analyzed the "paragraph B" criteria, as required, in determining if the severity of Ms. S.'s mental impairments—considered singly and in combination—meet or medically equal the mental impairment listings. *See* 20 C.F.R. § 416.920(d), 416.925, 416.926. As part of the paragraph B analysis, the ALJ concluded that Ms. S. has moderate limitation in her ability to concentrate, persist, or maintain pace. [DE 12 at 27]. In support, the ALJ cited Ms. S.'s Function Report dated March 3, 2015, in which she stated she could pay attention for half an hour at a time. [*See id.* at 204]. The ALJ also cited "Exhibit 5F" stating that in April 2015, Ms. S. was observed as having normal concentration.[5] [*Id.* at 27].

In the RFC section of his decision, the ALJ elaborated further on the effects of Ms. S.'s mental impairments on her ability to work. More specifically, the ALJ cited to additional treatment records where she reported to her primary care physician that the medication for her depression and anxiety "was helping." [*Id.* at 32]. The ALJ also noted conflicts between Ms. S.'s testimony and her alleged symptoms. For instance, the ALJ compared Ms. S.'s testimony that she did not like it when co-workers wore earbuds and did not talk to her with her claims that she has difficulty working in large groups and being around people. [*Id.*]. The ALJ augmented his argument by focusing on Ms. S.'s

---

[5] The ALJ's citation does not match the record. Exhibit 5F includes progress notes from Ms. S.'s primary care physician, Dr. Sadaf Bangash that end by March 2015.

13

activities of daily living and concluding that she "is able to engage in at least a somewhat full range of activities . . . ." [*Id.*].

Given this limited analysis, Ms. S. challenges the mental RFC assigned to her by the ALJ as an incomplete recitation of her CPP limitations arising from her mental impairments. In *Yurt v. Colvin*, the court "rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." 758 F.3d 850, 858–59 (7th Cir. 2014). In support, the court quoted SSR 85-15, which states:

> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job.

*Id.* at 759.

Yet, *Yurt* does not invalidate every mental RFC that incorporates the phrase "simple, routine tasks." Instead, the court in *Yurt* put ALJs on notice that care must be taken to ensure that a mental RFC represents completely a claimant's unique CPP limitations. The ALJ, here, crafted a mental RFC that did not use the words "concentration, persistence, and pace," but did include specific limitations related to workplace changes, quotas, and interactions with coworkers, supervisors and the public. [DE 12 at 29]. Thus, Ms. S. reliance on *Yurt* alone is misplaced because the mental RFC accounts for more CPP limitations that the RFC in *Yurt* did despite using some of the same language.

With that said, Ms. S. contends that her mental health history, including headache and other pain, psychological complications from insomnia, major depression, anxiety, likely claustrophobia, and borderline intellectual functioning across every axis suggest CPP deficits. Yet Ms. S. points to no evidence in the record that supports greater CPP limitations than those already reflected in the mental RFC defined by the ALJ. In fact, the ALJ's extensive delineation of mental limitations in Ms. S.'s RFC exceed the scope of his mental RFC analysis. Arguably, the ALJ failed to create a clear logical bridge from his analysis of the record to the mental RFC. Yet by incorporating greater limitations in Ms. S.'s RFC than those clearly discussed by the ALJ in his written decision, any such error is not prejudicial to Ms. S.

### b.    Physical RFC and Obesity

Ms. S. also argues that the ALJ failed to incorporate basic limitations related to her acknowledged morbid obesity into the RFC. Yet Ms. S. does not develop the argument other than to say that the ALJ's RFC "defies logic" and therefore "fail[ed] to meet the required logical bridge." [DE 18 at 22]. This Court will not scour the record to locate evidence to support Ms. S.'s argument further. Indeed, this Court is not a "pig[] hunting for truffles buried in briefs" or an "archaeologist" searching the record for a legitimate argument. See *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 898 (7th Cir. 2018); *Alexander v. City of S. Bend*, 433 F.3d 550, 556 (7th Cir. 2006); *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999).

### 2. Emphasis on Activities of Daily Living

Ms. S. argues that the ALJ overemphasized her activities of daily living in determining the scope of limitations in her RFC. A person's ability to perform daily activities, especially if they can be done only with significant limitations, does not necessarily translate into an ability to work full-time. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). In determining a claimant's RFC, an ALJ cannot ignore limitations the claimant faces when performing household activities. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). Despite Ms. S.'s contention, the ALJ did expressly consider her limitations in performing daily activities. The ALJ did not indicate that Ms. S. was capable of a full range of daily activities. He acknowledged that she was capable of "at least a somewhat full range of activities" and then noted that she could drive for short periods and required some assistance with her personal needs. [DE 12 at 32]. While Ms. S. may have preferred a more explicit description of her limitations, the ALJ did not ignore her limitations or equate her daily activities with full-time work. The ALJ explained the RFC assigned to Ms. S. by discussing her assorted physical and mental impairments with appropriate consideration of her ability to perform daily activities. *See* SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017).

### III. CONCLUSION

As discussed above, the ALJ failed to develop a full and fair record, especially with regard to Ms. S.'s migraines and borderline intellectual functioning. Accordingly, the undersigned **RECOMMENDS** the ALJ opinion denying Ms. S.'s application for SSI benefits be **REMANDED** for further consideration. The undersigned **NOTES** that Ms.

S. did not clearly demonstrate further error in the ALJ's decision. However, the undersigned **FURTHER RECOMMENDS** that care be taken on remand to fully account for all the limitations arising from Ms. S.'s extensive physical and mental impairments.

> **NOTICE IS HEREBY GIVEN that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

**SO ORDERED** this 3rd day of March 2020.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
